_____

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

_____

| | |
|---|---|
| **eQHealth AdviseWell, Inc.** **formerly known as** **eQHealth Solutions, Inc.** | **Civil Action No.** **Section** |
| **v.** | **Judge:** |
| **Homeland Insurance Company of New York** | **Mag. Judge** |

_____

## COMPLAINT FOR DAMAGES
_____

**Now into Court,** through undersigned counsel, comes eQHealth AdviseWell, Inc., formerly known as eQHealth Solutions, Inc. ("eQHealth"), and for Complaint against Homeland Insurance Company of New York ("Homeland"), with respect, avers as follows:

**1.**

At all times pertinent hereto, eQHealth was a corporation existing by virtue of the laws of the State of Louisiana, responsible for conducting utilization management for Medicaid Services for the State of Florida as its Quality Improvement Organization.

**2.**

Homeland is a corporation organized and existing under the laws of New York, with its principal place of business in Plymouth, Minnesota.

**3.**

Venue is appropriate in this district pursuant to 28 U.S.C. 1391(d) because Homeland is a corporation doing business within the state of Louisiana.

4.

At all times pertinent herein, a policy of liability insurance issued by Homeland to eQHealth was in place, being Managed Care Organizations Errors and Omissions Liability Policy No. MCR-10591-19 ("the policy"), which policy had a coverage period from January 16, 2019, to January 16, 2020.

5.

The policy is a "claims made" policy under which Homeland's obligation to defend and cover is triggered by written report of a claim covered by the policy.

6.

The liabilities covered by the policy included coverage for an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by or in its behalf in the performance of "Managed Care Activity".

7.

As part of its contract with the state of Florida, eQHealth was responsible for processing prior authorization requests, including out-of-state prior authorization requests, for certain of Florida's Medicaid services.   In doing so, dealt with Florida's Agency for Health Care Administration ("AHCA").

8.

Pursuant to an endorsement, AHCA was covered by the policy as an additional insured.

9.

The liabilities covered by the policy included coverage for eQHealth's errors and omissions committed in authorizing out-of-state prior authorization requests for certain Medicaid services provided by Florida.

10.

On or about August 3, 2018, B.N., a resident of the state of Florida, was admitted on an emergency basis into Brookhaven Hospital ("Brookhaven"), a licensed psychiatric hospital located in Tulsa, Oklahoma.

11.

B.N. was a 39-year-old Florida resident who is, or previously had been, or had been thought to be a Qualified Medicare Beneficiary ("QMB") and/or enrolled in the Florida Medicaid Medically Needy program.

12.

On or about August 17, 2018, a prior authorization request was approved by eQHealth for B.N. to receive 180 days of inpatient services at Brookhaven to be paid by Florida Medicaid at a rate of $1,250.00 per day.

13.

On or about January 16, 2019, a continued stay authorization request was submitted by Brookhaven to eQHealth requesting 180 additional days of inpatient services for B.N.

14.

Because eQHealth determined that B.N. no longer met the medical necessity criteria for the level of neurological rehabilitation provided by Brookhaven, it denied Brookhaven's request for 180 additional days of inpatient services for B.N.

**15.**

Despite the foregoing, eQHealth approved an additional 30 days of inpatient services to B.N. at Brookhaven so that the transition of B.N.'s care to Florida could be accomplished.

**16.**

B.N. requested a Fair Hearing[1] regarding the denial of the 150 additional days of inpatient care sought by Brookhaven in its continued stay authorization request.

**17.**

On or about May 29, 2019, a final order upholding the denial of the additional inpatient services B.N. requested was entered.

**18.**

On or about July 2, 2019, B.N. was discharged from Brookhaven and transported to the State of Florida.

**19.**

Brookhaven claimed the amount of $275,025.15 from AHCA for uncompensated amounts related to B.N.'s care.

**20.**

AHCA refused Brookhaven's demand on the ground that eQHealth's prior authorization approval for Medicaid services to B.N. was in error because B. N. was in fact not covered by Medicaid.

**21.**

In addition, AHCA contended that eQHealth erred by authorizing the wrong services for

---

[1] A Fair Hearing is a proceeding before an administrative law judge in which a party aggrieved by an allegedly incorrect decision concerning Medicaid services may seek relief from the decision.

B.N. at Brookhaven because such services were readily available in Florida.

22.

The errors committed by eQHealth in not determining whether B. N. was covered by Medicaid and/or by authorizing services which were readily available in Florida constituted covered errors and/or omissions in eQHealth's "Managed Care Activity" covered by Homeland's policy.

23.

On May 7, 2019, eQHealth verbally reported the claim to Homeland.

24.

On or about June 17, 2019, Homeland was forwarded a copy of an email from Ms. Liz Willson, eQHealth's Chief of Staff, to Christine Gatlin in which Ms. Gatlin was instructed to "formally file an E & O claim."

25.

Attached to the email was a letter from Gary Jones, an attorney who represented Brookhaven, dated June 10, 2019, in which he refers to a determination made by Dr. Kathy Goldberg, eQHealth's Medical Director, refusing to extend B.N.'s medical care at Brookhaven for an additional 30 days because the services he needed were readily available in Florida.

26.

Mr. Jones states in the letter furnished to Homeland that Florida Medicaid, i.e., AHCA, and Dr. Goldberg "…are responsible for locating an organization within the state that is ready and willing to admit [B. N.] and provide the services he needs and are also responsible for the cost of transporting [B. N.] to his new provider." Dr. Goldberg is said by Mr. Jones to be eQHealth's Medical Director.

**27.**

In addition to demanding that Dr. Goldberg arrange for and pay for B.N.'s transportation and care in Florida, the letter from Mr. Jones also demanded payment be made to Brookhaven for the services it rendered pursuant to the authorization issued by.

**28.**

Homeland acknowledged receipt of the letter from Mr. Jones on June 21, 2019.

**29.**

The letter from Mr. Jones was a written "claim" triggering Homeland's duty to defend and cover eQHealth because his demands on Dr. Goldberg were a "… written demand (including a written demand in electronic form) from any person, or entity seeking money or services or civil, injunctive, or administrative relief from you."

**30.**

Despite the written demand made by Mr. Jones that Dr. Goldberg take specific actions and arrange for services for B.N., Homeland spuriously and in bad faith took the following position in correspondence to eQHealth dated June 21, 2019:

> "The information we received in relation to this matter does not include a written demand seeking money or services or civil, injunctive, or administrative relief from you or otherwise indicate that a Claim has been made against any of you. Because there is no Claim, no coverage is triggered."

**31.**

In subsequent correspondence to eQHealth dated February 3, 2020, Homeland referred to internal notes made by Mr. Clyde Haig, a Homeland claims handler, following a telephone conversation that took place between him and eQHealth's Christine Gatlin and Dennis Hardy on May 7, 2019, *before* Homeland received the correspondence from Mr. Jones, to support its assertion that no 'claim' under the policy had been reported.

**32.**

Homeland's internal notes describe its understanding of the import of the May 7, 2019, conversation between Homeland's Clyde Haig and eQHealth's representatives as follows:

> "AHCA asked to pay the bill for B.N.'s stay at Brookhaven, although had not seen the bill and thought that it was generally being asked to be financially responsible for the treatment of the patient; and as of 5/7/19, B.N. was still at Brookhaven."

**33.**

Rather than admit that it was aware of AHCA's specific demands as early as May 7, 2019, or that its receipt of the Jones letter was a coverage-triggering event, Homeland has in bad faith contended that eQHealth merely reported a potential claim, which it argues is ineffective to trigger coverage.

**34.**

In addition to the foregoing, coverage for eQHealth was triggered by Mr. Jones's letter of June 10, 2019, because it clearly and distinctly set forth coverage-triggering claims against AHCA, an additional insured under Homeland's policy.

**35.**

Specifically, the endorsement adding AHCA to the policy as an additional insured modifies the definition of the word "you" to include AHCA with respect to any claim for any error or omission allegedly committed by eQHealth.

**36.**

The purpose of the additional insured endorsement is to protect AHCA from any of eQHealth's errors and omissions that might result in AHCA's liability.

**37.**

The reporting requirements of the policy obligate "you" to provide written notice of a claim, which is defined as any written demand from any person or entity seeking money or services or civil, injunctive, or administrative relief from "you".

**38.**

Because both AHCA and eQHealth are insureds under the policy, i.e., "you", the coverage-triggering June 10, 2019, letter from Mr. Jones that constituted notice as to AHCA was also coverage-triggering notice as to eQHealth.

**39.**

In addition, the June 10, 2019, letter from Mr. Jones constituted a written notice of a "related claim" as defined by the policy that also triggered eQHealth's right to defense and coverage from Homeland.

**40.**

Because of Homeland's refusal to acknowledge its duties to cover and defend eQHealth and because it was aware that it made errors and omission in the management of B. N.'s care, eQHealth agreed on or about August 28, 2019, to pay the sum of $262,500.00 to settle Brookhaven's claims and obtain releases for itself and for AHCA.

**41.**

In addition to the settlement in the sum of $262,500.00, eQHealth incurred the sum of $35,258.00 in defending itself from the claim. Moreover, it has incurred additional ongoing attorney's fees and expenses in pursuing Homeland for its wrongful denial of defense and coverage.

**42.**

Despite being advised that the law forbids an insurer from relying on a policy's requirement that an insured obtain consent for a proposed settlement when the insurer has improperly denied coverage, Homeland has dealt with eQHealth in bad faith by denying coverage on the spurious argument that the settlement was unauthorized by Homeland.

43.

Having been abandoned in bad faith by Homeland, eQHealth had no choice but to seek the best compromise it could make.

44.

Homeland's actions violated LSA-R.S. 22:1973 and /or LSA-R.S. 22:1892, the Louisiana "bad faith" statutes, entitling eQHealth to all damages and penalties provided by those laws. In the alternative, Homeland's actions violated Florida Statute 624.155(1), entitling to all remedies afforded by Florida law.

45.

Plaintiff requests trial by jury.

**WHEREFORE,** after due proceedings be had, eQHealth AdviseWell, Inc. , formerly known as eQHealth Solutions, Inc., prays for judgment against Homeland Insurance Company of New York in the full and true sum of $262,500.00, as well as attorney's fees in the sum of $35,258.00, all attorney's fees necessary to prosecute this action, prejudgment interest, all costs and expenses incurred in pursuing this matter, as well as all penalties allowed by LSA-R.S. 22:1973 and /or LSA-R.S. 22:1892 or, alternatively, Florida Statute 624.155(1), and for all such other and further relief as law and justice may require.

**SIGNATURE BLOCK ON FOLLOWING PAGE**

Respectfully Submitted,

/s/Randall L. Kleinman
**RANDALL L. KLEINMAN (7445)**
**Law Offices of Randall L. Kleinman, LLC**
1100 Poydras Street, Suite 2005
New Orleans, Louisiana 70163
Telephone: (504) 539-7100
Facsimile: (504) 539-7101
*Counsel for plaintiff*

**Page 10 of 10**